**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

WINDHAVEN MANAGERS, INC.,

    Plaintiff,                                               Case No. 8:14-CV-1808-T-24-EAJ

vs.

CHARTIS SPECIALTY INSURANCE
COMPANY (N/K/A AIG SPECIALTY
INSURANCE COMPANY),

    Defendant.
_____/

**ORDER**

This cause comes before the Court on a Motion to Dismiss filed by Defendant Chartis Specialty Insurance Company n/k/a AIG Specialty Insurance Company ("Chartis"), to which Plaintiff Windhaven Managers, Inc. ("Windhaven") filed a response, and Chartis filed a reply. (Docs. 6, 10, 13).

**I.**     **BACKGROUND**

In the instant action, Windhaven alleges it was wrongfully denied coverage under its professional liability insurance policy issued by Chartis, a "claims-made" policy covering Windhaven for losses arising out of claims "first made" against it during the policy period of May 1, 2011 to May 31, 2012, and reported to Chartis within 30 days after the policy period. (Doc. 1)

    **A.**     **Before the Start of Windhaven's Policy Period**

Windhaven is an insurance carrier and issued Faye Austin a motor vehicle policy. Ms. Austin was subsequently injured in a car accident and, in December 2009, sued Windhaven in state court, alleging she was entitled to her policy's $10,000 limit for her injuries ("coverage action"). (Doc. 1 at ¶¶ 9-11).

1

Also, in December 2009, Ms. Austin filed a civil remedy notice of insurer violation (CRN) pursuant to Florida's bad-faith statute, Florida Statutes § 624.155(1)(b).[1] Ms. Austin's CRN alleged that Windhaven had in bad faith failed to settle her claim and "refused to tender the $10,000 [of] benefits" owed under her policy. (Doc. 1-2 at 7-8; Doc. 1 at ¶ 12).

### B.     During Windhaven's Policy Period

In May 2011, Windhaven's policy period began.  (Doc. 1-3 at 2).  Coverage under this claims-made policy was limited to claims first made against Windhaven during the policy period and reported in writing to Chartis within 30 days after the policy period:

> This policy shall pay the Loss of the Insured arising from a **Claim first made against the Insured during the Policy Period** and reported in writing to the Company during the Policy Period or within thirty (30) days after the end of the Policy Period, . . . for any actual or alleged Wrongful Act of the Insured in the rendering of or failure to render Professional Services, but only if such Wrongful Act occurs prior to the end of the Policy Period.

(*Id*. at 4) (emphasis added).

Under the policy, a "claim" is a "written demand for monetary damages," or "judicial . . . proceeding in which monetary damages are sought." (*Id*. at 4-5). The policy explains when a claim is considered to have been "first made" against the insured and how the insured must report such a claim to Chartis no later than 30 days after the expiration of the policy period:

> (a) The Insured shall, as a condition precedent to the obligations of the Company under this policy, give written notice to the Company of a Claim made against the Insured as soon as practicable after the Claim is reported to, or first becomes known by, the risk manager, general counsel, or president (or equivalent position) of the Insured, but in <u>all</u> events written notice of a Claim must be given to the Company

---

[1] This statute authorizes any person to bring a civil action against an insurer for its bad-faith failure to settle its insured's claim. *See* Fla. Stat. § 624.155(1)(b). As a condition precedent to pursuing this statutory remedy, however, the insurer must be given written notice (on a form provided by and filed with the Florida Department of Financial Services) and 60 days to cure the claimed bad faith by paying the benefits owed on the insurance contract. *Id*. § 624.155(3); *see also Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000).

> no later than either: (1) anytime during the Policy Period; or (2) within 30 days after the end of the Policy Period . . . .
>
> (b) Notice hereunder shall be given in writing to Chartis, Financial Lines Claims, P.O. Box 25947, Shawnee Mission, KS 66225. If mailed, the date of mailing shall constitute the date that such notice was given and proof of mailing shall be sufficient proof of notice. **A Claim shall be considered to have been first made against the Insured when written notice of such Claim is received by the Insured, or by the Company, whichever comes first.**
>
> (c) The Insured shall furnish the Company with copies of reports, investigations, pleadings, and all related papers, and such other information, assistance and cooperation as the Company may reasonably request.

(*Id*. at 10, 20) (second emphasis added).[2]

On July 14, 2011, following a jury trial in Ms. Austin's coverage action, the state court entered judgment in the amount of $893,651.85, against Windhaven and in Ms. Austin's favor. (Doc. 1 at ¶ 13; Doc. 1-2). On the same day, Ms. Austin filed an amended complaint against Windhaven, alleging that its bad-faith failure-to-settle was a violation of Florida Statutes § 624.155 ("bad faith action"). (*Id*. ¶ 16; Doc. 1-2). Specifically, Ms. Austin alleged that she had made a claim for coverage under her policy and offered to settle her claim within the policy limits; Windhaven in bad faith rejected her claim; and she brought a coverage action against Windhaven, resulting in a judgment in her favor exceeding her policy limit. (Doc. 1 at ¶ 17; Doc. 1-2). Ms. Austin sought damages in the amount of the excess judgment.

Windhaven's claims manager mailed a letter, dated August 26, 2011, to "A.I. Management and Professional Liability Claims Adjusters" at "P.O. Box 1000, New York, NY 10268," stating:

> This letter is to notify you of a possible claim made against Windhaven Insurance Managers. There was a lost lawsuit filed by Faye Austin against Windhaven Insurance. We have sent the file to Lyderck Diaz to file an appeal. . . .

---

[2] Written notice of a claim may also be given by emailing Chartis. (*Id*. at 21).

(Doc. 1-4). Windhaven alleges that the purpose of this letter was to put Chartis on notice of Ms. Austin's bad faith action against Windhaven. (Doc. 1 at ¶ 23).

In October 2011, Windhaven appealed the judgment entered in Ms. Austin's coverage action. (*Id*. at ¶ 14).

### C. After the Policy Period

The policy period expired in May 2012, with a reporting deadline of June 2012. Three months later, in October 2012, Windhaven's appeal resulted in an affirmance of the judgment entered in Ms. Austin's coverage action. (*Id*. at ¶ 15). Windhaven's claims manager then sent an email to Chartis, dated November 5, 2012, stating:

> The purpose of this correspondence is to notify you of a pending Bad Faith count filed against Windhaven Insurance Company. Initially, this was a UM claim filed against Windhaven. The date of loss for the UM claims was March 24, 2009. Factually, the plaintiff was struck by a bus owned by the City of Tampa. Eventually, the plaintiff filed a lawsuit and the matter was litigated. The Plaintiff was able to secure a judgment in excess of the $10,000.00 policy limits. Windhaven then appealed the judgment [in October 2011], and assigned the lawfirm [stet] of Lydecker Diaz.
>
> Recently, the appellate court denied Windhaven's appeal [in October 2012] and the plaintiff is pursuing a bad faith claim as it has amended their complaint to add that count [in July 2011]. We have asked Lydecker Diaz to respond to that count.
>
> Please contact the undersigned at your earliest convenience. Thank you for your attention to this matter. . . .

(Doc. 1-5). Windhaven contends this was its "second letter to Chartis providing notice of [Ms. Austin's bad faith] lawsuit." (Doc. 1 at ¶ 25).

In response to this email, Chartis sent Windhaven a letter, dated February 12, 2013, acknowledging receipt of Ms. Austin's amended complaint. (Doc. 1-6). However, Chartis asserted that no coverage existed because the claim was made and reported outside the policy period:

4

> [T]he Claim at issue here was made outside the policy dates . . . . CSIC was not made aware of this claim until November 5, 2012, almost six months after the Policy Period expired . . . . Accordingly, there exists no coverage for this Claim[.]

(*Id.*).

According to Windhaven, Chartis then "supplemented its denial letter and acknowledged receipt of Windhaven's August 26, 2011 letter." (Doc. 1 at ¶ 26). Specifically, Windhaven cites to a letter from Chartis to Windhaven, dated February 20, 2013, which states:

> This letter responds to your email dated February 12, 2013[3] in which you attach a copy of an August 26, 2011 letter from Windhaven to A.I. Management and Professional Liability Claims Adjusters allegedly putting Chartis on notice of the Faye Austin matter prior to the expiration of the Policy.

(Doc. 1-7 at 2). Chartis nonetheless concluded that no coverage existed under the policy, finding that Windhaven's August 2011 letter failed to comply with the policy's notice requirements and therefore failed to report Ms. Austin's claim during the policy period. (*Id.* at 3).

### D.   This Lawsuit

In July 2014, Windhaven filed a two-count Complaint for declaratory judgment and breach of contract against Chartis, alleging Chartis improperly denied Windhaven coverage for losses arising from Ms. Austin's bad faith action. (Doc. 1 at ¶¶ 30-44). Chartis moves to dismiss the Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6), arguing that Windhaven's policy provides no coverage because Ms. Austin's bad faith action was a claim that was "first made" against Windhaven outside the policy period. (Doc. 6). Alternatively, Chartis argues that, even if the claim was first made during the policy period, no coverage exists because Windhaven did not timely report the claim.

---

[3] Windhaven's complaint does not attach Windhaven's February 12, 2013 email to Chartis.

**II.     LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege sufficient facts, accepted as true, to state a plausible claim for relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court views the complaint in the light most favorable to the plaintiff.  *Murphy v. Fed. Deposit Ins. Corp.,* 208 F.3d 959, 962 (11th Cir. 2000) (citation omitted).

**III.    DISCUSSION**

The decisive issue is whether Ms. Austin's bad faith claim was "first made" against Windhaven during the policy period and therefore covered under Windhaven's claims-made policy.  Chartis argues (and the Court agrees) that Ms. Austin first made her bad faith claim against Windhaven when she filed her CRN in 2009.  (Doc. 6).

Windhaven counters that Ms. Austin could not have first made her bad faith claim against Windhaven when the CRN was filed, arguing that the CRN was not an "enforceable demand" (as Ms. Austin could not have proceeded with her bad-faith action where judgment in the underlying coverage action had not been entered) and therefore not a "claim" at that time.  (Doc. 10). Windhaven contends Ms. Austin first made her bad faith claim against Windhaven during the policy period when she filed her amended complaint in 2011.

At the outset, neither party addresses the following policy language—expressly providing when a claim is deemed to have been "first made against the Insured"—which expressly addresses this issue:

> A Claim shall be considered to have been first made against the Insured **when written notice of such Claim is received by the Insured, or by the Company, whichever comes first**.

(Doc. 1-3 at 10) (emphases added).  Under these express terms, then, Ms. Austin's bad faith claim was first made against Windhaven when written notice of that claim was received by Windhaven, or by Chartis, whichever came first.

Here, Ms. Austin's CRN provides written notice of Ms. Austin's bad faith claim under the policy. Specifically, the CRN details the allegations underlying her bad-faith failure-to-settle action against Windhaven pursuant to § 624.155, and constitutes a demand for Windhaven to pay the benefits owed under her policy. *See* Fla. Stat. § 624.155(3); *Talat Enterprises, Inc. v. Aetna Cas. & Sur. Co.*, 753 So. 2d 1278, 1283 (Fla. 2000). The CRN is a written demand for monetary damages and therefore a claim as defined by the policy. Further, Windhaven's Complaint indicates that Windhaven received the CRN—*i.e.,* written notice of Ms. Austin's bad faith claim—before Chartis in 2009. (Doc. 1 at ¶ 12; Doc. 1-2 at 9). Thus, under the policy language quoted above, Ms. Austin's bad faith claim is considered to have been first made against Windhaven when Windhaven received the CRN in 2009. *See, e.g., Fidelity Nat'l. Property and Cas. Co. v. Boardwalk Condo. Ass'n, Inc.*, 2010 WL 1911159, at * 5 (N.D. Fla. May 12, 2010) (where the policy provided that a claim was "first made" when the insured receives notice of the claim, the claim was "first made" when the insured received pre-suit letters). Because this was outside the policy period, no coverage exists under the policy. *See id.*; *see also Country Manors Ass'n, Inc. v. Master Antenna Sys., Inc.*, 534 So. 2d 1187, 1194 (Fla. 4th DCA 1989) (no coverage under a claims-made policy where the claim was first made before the policy's effective date).

The Court rejects Windhaven's argument that the CRN is not a claim as defined by the policy because Ms. Austin could not have proceeded with her bad faith lawsuit; whether Ms. Austin could have proceeded with a bad faith lawsuit is irrelevant under the policy's definition of "claim." The Court also rejects Windhaven's argument that the policy is ambiguous because the definition of claim includes written demands or judicial actions, without any limitation as to which one would trigger coverage. The policy is clear that coverage is triggered by a claim that is first made against Windhaven during the policy period, and that a claim is first made against

7

Windhaven when written notice of the claim is received by Windhaven, or Chartis, whichever comes first. Here, although the CRN and amended complaint both meet the definition of claim, Windhaven first received written notice of Ms. Austin's bad faith claim when it received the CRN in 2009. Thus, no coverage exists for Ms. Austin's bad faith claim against Windhaven.

Chartis' motion to dismiss Windhaven's complaint with prejudice is therefore granted.[4] *See, e.g., Jennings Const. Servs. Corp. v. Ace American Ins. Co.*, 2012 WL 85180, at *2 (M.D. Fla. Jan. 11, 2012) (granting insurer's motion to dismiss with prejudice where the insured's complaint failed to allege that the claim was reported during the policy period of the claims-made policy), *aff'd* 472 Fed. Appx. 906 (11th Cir. Jul. 27, 2013).

## IV.  CONCLUSION

Accordingly, it is hereby ordered and adjudged that Chartis' Motion to Dismiss (Doc. 6) is **GRANTED**. Plaintiff's Complaint (Doc. 1) is **DISMISSED WITH PREJUDICE**, and the Clerk is directed to close this case.

**DONE AND ORDERED** at Tampa, Florida, this 24th day of November, 2014.

SUSAN C. BUCKLEW
United States District Judge

Copies To: Counsel of Record

---

[4] Because no coverage exists on this basis, the Court does not reach Chartis' alternative argument—that, even if Ms. Austin's bad faith claim had been first made against Windhaven during the policy period, no coverage exists because Windhaven failed to timely report the claim. Nor does the Court reach Windhaven's arguments in response to that argument—that: (1) Florida's Claims Administration Statute (CAS) applies to bar Chartis from denying coverage based on untimely claim reporting; and (2) even if the CAS does not apply, Chartis must show it was prejudiced by Windhaven's untimely claim reporting.